UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
          v.                )          CRIMINAL NO. 03-10220-MEL
                            )
SEAN BUCCI                  )

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Sean Bucci, submits this memorandum to assist the Court in sentencing.  First, defendant submits that the Court should recalculate the guideline sentencing range found by Probation as follows: 1) award Mr. Bucci a two point reduction for acceptance of responsibility; 2) the Court should not impose a two point enhancement for obstruction of justice; and 3) find his base offense level under U.S.S.G. § 2D1.1 is 30 rather than 32.  Thereby, resulting in a total offense level of 28 with a resulting sentencing guideline range of 78 - 97 months.  Should the Court adopt defendant's guideline calculation, defendant submits that a sentence of 72 months is sufficient, but not greater than necessary, to vindicate the goals of sentencing as set forth in 18 U.S.C. § 3553(a).

Alternatively, should the Court disagree with one or more of defendant's position regarding the correct guideline sentencing range, this Court should impose a sentence of no more than 96 months (9 years) depending on the actual guideline range found by the Court.  This represents the fairest sentence this court can impose and is appropriate in light of the relevant factors

enumerated in 18 U.S.C. § 3553 and the advisory sentencing guidelines.

## PROCEDURAL HISTORY

On February 27, 2007, following a nine day trial, a jury convicted Mr. Bucci of conspiracy to possess with intent to distribute marijuana, possession with intent to distribute marijuana, conspiracy to commit money laundering, money laundering and structuring, and tax evasion.[1]   In an effort not to belabor the lengthy trial testimony in this case, the evidence at trial showed that between January 2002 and June 4, 2003, Mr. Bucci conspired with Anthony Belmonte, Mark Wojciechowski and others to distribute marijuana.[2]  Furthermore, the jury found that starting in or about May 1998 until his arrest on June 4, 2003, Mr. Bucci conspired to commit money laundering and, in fact, laundered money.

The bulk of the testimony at trial consisted of witnesses who had been promised some form of leniency by the government. These witnesses were as follows: Leigha Genduso (Mr. Bucci's former live-in girlfriend), Mark Wojciechowski (a higher up in

---

[1] The jury returned a verdict of not guilty as to defendant's mother who was charged with conspiracy to commit money laundering.

[2] Defendant provided a detailed summary of the relevant trial testimony in his submission to the Probation Department and refers the Court to paragraphs 107 - 126 of the Presentence Report ("PSR") for defendant's version of the offense conduct.  Defendant hereby incorporates by reference those paragraphs of the PSR.

the marijuana conspiracy), Anthony Belmonte (Mr. Bucci's direct supplier of marijuana), and Eric Carbone ( a life-long friend and marijuana customer of Mr. Bucci).  Each and all of the above witnesses' credibility were seriously impugned during the course of the trial.  PSR, ¶¶ 107-126.  In addition, the testimony of each and all of the above witnesses was internally inconsistent, as well as inconsistent with one another.  Id.

In exchange for their testimony, the witnesses received the following: Leigha Genduso - never prosecuted for her role in the marijuana conspiracy; Mark Wojciechowski - received 4 years probation, no jail time, notwithstanding his admission that he personally distributed over 10,000 pounds of marijuana; Eric Carbone - never prosecuted for his role in the marijuana conspiracy; and Anthony Belmonte - awaiting sentencing by this Court.  However, as part of his plea agreement, the government agreed that Belmonte's base offense level under U.S.S.G. § 2D1.1 is capped at 26 reflecting the distribution of between 100 - 400 kilograms of marijuana.  Moreover, pursuant to a plea agreement, the government agrees that Belmonte should receive a 2 point reduction pursuant to 18 U.S.C. § 3553(f)(safety valve), and a 3 point reduction for acceptance of responsibility.  Therefore, prior to consideration of any substantial assistance motion filed by the government, Belmonte's guideline sentencing range is 37-46 months.

At the conclusion of the trial, the government moved to proceed to the forfeiture phase of the proceedings.  During this phase, the government asked the jury to return a general forfeiture verdict of $3,000,000.00 against Mr. Bucci.[3]  Notably, the jury rejected the government's request and instead returned a verdict in the amount of $2,000,000.00.  The jury's finding on this issue is critical because it represents the jury's determination and finding that Mr. Bucci was responsible for 697 kilograms of marijuana.  See PSR at ¶ 141 & p. 77 (Response to Government's objection) and Footnote 2, supra.

Following the jury verdict, the Court granted Mr. Bucci's request to remain on bail conditions.  Following a further hearing on the issue, the Court ordered Mr. Bucci to self-surrender to the Marshals office on March 2, 2007. Mr. Bucci complied with the Court's Order.

### PERSONAL BACKGROUND

Mr. Bucci is 34 years old with no prior criminal record.  He is the oldest of three children born to Bill and Catherine Bucci.

---

[3] The jury was specifically charged by the Court that they were to return a judgment regarding the gross "proceeds obtained by [Mr. Bucci] as a result of drug trafficking and is not reduced by any amounts [Mr. Bucci] paid for the drugs he later sold or for any other costs or expenses incurred."  That is to say the Court charged the jury to return a judgment reflecting Mr. Bucci's gross revenue (pounds of marijuana sold multiplied by the price he charged for his marijuana).  Accordingly, the $2,000,000.00 verdict reflects 1538 pounds of marijuana or 697 kilograms ($2,000,000.00 divided by $1,300.00 a pound). PSR, ¶ 141.

Mr. Bucci graduated from high school in 1991 and completed approximately one year of college at North Shore Community College.  By all accounts, Mr. Bucci is a kind, generous, and supportive family member and friend.  See Letters of Support, attached as Exhibit A.  Specifically, the letters from Georgia and Pamela Makrogiannis reflect Mr. Bucci's compassion and willingness to help others during difficult times.
In addition, the letters from his family show a warm and caring son and brother who often made time to help others.[4]

Mr. Bucci has been diagnosed as suffering from panic attacks and has been treated with antidepressants and anti-anxiety medications.  He continues to be treated since his incarceration on March 2, 2007.

## GUIDELINE ANALYSIS

Defendant raises three discrete objections to the Probation department's offense level calculation.

1) Defendant should not receive a two point enhancement for obstruction of justice;

2) Defendant is entitled to a two point reduction for acceptance of responsibility; and

---

[4] Notably, the one consistent point of testimony at trial was that Mr. Bucci often gave of himself to his friends.  In fact, Ms. Genduso believed that people often took advantage of his generosity. Moreover, Mr. Bucci's decorum throughout the trial was respectful and attentive, and, as noted above, he always respected the Court's conditions of release and self-reported when so ordered by the Court. See Exhibit E.

3)    The Presentence Report's calculation of relevant
      conduct overstates the weight of marijuana attributable
      to Mr. Bucci, and his base offense level under U.S.S.G.
      § 2D1.1 should be 30 rather than 32.

I.    The Court Should Not Impose a Two Point Enhancement for
      <u>Obstruction of Justice</u>.

The Presentence Report imposes a two point enhancement for
obstruction of justice based solely on statements made by Darren
Martin during a proffer with the Government on March 5, 2007.
<u>See</u> PSR at p. 85 (Response to Objections).  The extent of
Martin's statements are found in his proffer.  <u>See</u> DEA - 6 dated
March 5, 2007, attached as Exhibit B.  In its entirety Martin's
statements are as follows:

> Martin stated that after Bucci was released from
> custody, Bucci told Martin that he created the
> website <u>www.whosarat.com.</u>  Bucci told Martin that all
> 'rats' should be on the website and that everyone who
> cooperated with the Government in their (Bucci's and
> Martin's) case would be listed on the website. Martin
> recalled that while visiting Bucci at O'Connor's house,
> Bucci showed Martin the website.  Martin stated that he
> factored in the likelihood of being listed on the
> website if he also cooperated and that was a
> significant reason why he did not cooperate.  Martin
> stated that Bucci knows where his children and the
> mother of his children live and that he was concerned
> for their safety.  When Martin told Bucci that pleading
> guilty and giving a 'safety valve' proffer was an
> option for him, Bucci told Martin that a 'safety valve'
> proffer was the same thing as 'ratting.'  Bucci always
> said the same thing when discussing the possibilities
> of people getting hurt for being listed on the website;
> that people who decide to cooperate with the Government
> have to deal with the consequences of being a 'rat.'
> Bucci also often told Martin that he [Martin] was the
> 'key' to the criminal case against him and that if
> Martin cooperated, he [Bucci] would be done.  Bucci
> told Martin that he intended to list everyone who

-6-

> cooperated with the Government in his case on the
> website.  Based on Bucci's statements, Martin believed
> that if he cooperated with the Government or took part
> in a 'safety valve' proffer, then Bucci would list him
> on the website.  When Martin pleaded guilty, Bucci
> called him trying to determine whether he [Martin] was
> going to cooperate with the Government and testify
> against him at trial.

Exhibit B, ¶ 8.

Based on these statements, and these statements alone,

Presentence Report concludes that Mr. Bucci obstructed justice

under U.S.S.G. 3C1.1.[5]  Defendant submits that even if Bucci made

the statements attributed to him by Martin, such comments fall

far below the bar set by U.S.S.G. § 3C1.1.[6]  See United States v.

Emmert, 9 F.3d 699 (8th Cir. 1993)(statements advising witness to

"stay strong" and "be quiet" were not so plainly obstructive as

to warrant adjustment); United States v. McLaughlin, 126 F.3d 130

(3rd Cir. 1997)(reversing imposition of two-level enhancement for

obstruction where there was no contention or evidence that

defendant sought to intimidate or unlawfully influence witness).

---

[5] Defendant notes that the government bears the burden of proving
that the defendant obstructed or impeded the administration of
justice, justifying a two level increase under Section 3C1.1.  See
United States v. Hanhardt, 361 F.3d 382 (7th Cir. 2004)(finding
government failed to meet its burden to prove defendant's unsworn
statements impeded investigation); United States v. Aguilar-Portillo,
334 F.3d 744 (8th Cir. 2003)(affirming where government failed to meet
its burden to prove defendant was lying)

[6] Application Note 4(a) to U.S.S.G. § 3C1.1, which appears to be
the most relevant provision, prohibits "threatening, intimidating, or
otherwise unlawfully influencing a co-defendant, witness, or juror,
directly or indirectly, or attempting to do so."

In the main, this Court has already passed on this issue when it denied the government's motion to revoke Mr. Bucci's pretrial release.  <u>See</u> Memorandum and Order of the Court dated January 8, 2007 (hereafter "Order").  The government's motion relied on the fact that a potential trial witness felt intimidated by certain statements made by Mr. Bucci during an appearance on the Geraldo At Large Show.  In denying the motion, this Court found that Mr. Bucci's statements were protected speech.  Order, p. 3.  The Court went on to find that while Mr. Bucci's actions "pushed the envelope" they did not violate his conditions of release and did not constitute threatening or intimidating a witness.  <u>Id</u>. at 3 - 4.  Defendant asserts that Martin's concerns, which predate the above ruling by a number of years, are even vaguer and more ambiguous then those previously rejected by the Court.

Here, Martin states that he felt apprehensive or nervous that he might be placed on the website should he cooperate or agree to a safety valve proffer.  Quite simply, such an apprehension or fear of what might happen to one if they cooperate is systemic to the federal judicial system and does not warrant a finding of obstruction.  <u>Emmert</u>, 9 F.3d at 704 - 05.  Moreover, defendant's alleged vague comments to Martin cannot constitute obstruction because they do not rise to the level of threats or the most virulent form of intimidation.  <u>See Virginia</u>

-8-

v. Black, 538 U.S. 343, 359 - 60 (2003)(state may prohibit speech that constitutes "true threat" defined as speaker means to convey a serious expression to commit an eminent act of unlawful violence).  In sum, defendant's statements to Martin do not convey a threat of unlawful violence and Martin did not take them as such.  Rather, Martin simply felt uneasy about cooperating because he did not want to be listed on the website.  Defendant's constitutionally protected speech of operating the website is an insufficient basis for a two point enhancement for obstruction.

Finally, Martin was arrested on the instant case on June 4, 2003.  Whosarat.com did not come into existence until August, 2004, some 14 months after Martin's arrest.  Yet, during that entire time period, Martin chose neither to plead guilty nor cooperate with the government.  He made that choice not because of whosarat.com or a feeling of intimidation, but because he felt it was in his best interest.  Similarly, when he eventually decided to plead guilty he did so because he believed that was in his best interest.  Clearly, Martin's actions in this case were the product of multiple motivations and not driven solely by his concerns regarding the website.

For the above reasons defendant submits that the Court should not accept the Presentence reports awarding of a two point enhancement for obstruction of justice.

-9-

II.  The Court Should Grant Defendant a Two Point Reduction
     <u>for Acceptance of Responsibility</u>.

Conviction at trial does not automatically preclude a

defendant from consideration for acceptance of responsibility.

U.S.S.G. § 3E1.1, Application Note 2.  The determination that a

defendant has accepted responsibility is fact-specific.  <u>Id</u>.

Several circuits have held that a district court's discretion in

determining acceptance of responsibility is entitled to

extraordinary deference.  <u>See</u>, <u>e.g.</u>, <u>United States v. Anderson</u>,

174 F.3d 515, 525 (5th Cir. 1999)(appellate court will affirm

sentencing court's § 3E1.1 decision "unless it is 'without

foundation,' a standard of review more deferential than the

clearly erroneous standard").

Here, Mr. Bucci, through counsel, admitted at trail that he

conspired to distribute marijuana.  In fact, the very first words

of counsel's opening statement were "Sean Bucci is a marijuana

dealer."  Transcript of Opening Statements, p. 25.  Counsel went

on to state, "this trial is not about whether Sean Bucci sold

marijuana; he did.  This trial is about how much marijuana Sean

Bucci sold..."  <u>Id</u>.  Moreover, Mr. Bucci did not contest 16 out

of the 17 counts contained in the second superseding indictment,

and his challenge to count one was limited solely to the issue of

how much marijuana was involved in the overall conspiracy.  To

that extent, this case is similar to a defendant who pleads

guilty but reserves his right to contest weight.  In effect, that

is exactly what Mr Bucci did at trial.  See United States v. Robinson, 75 Fed. Appx. 32 (2003)(unpublished opinion, copy attached as Exhibit C)(defendant entitled to two point reduction for acceptance of responsibility after trial where he contested only weight of drugs involved); United States v. Estrada-Martinez, 11 Fed. Appx. 725, 728 (9th Cir. 2001) (unpublished opinion, copy attached as Exhibit D)(acceptance of responsibility awarded post trial in marijuana conspiracy case where defendant contested weight); Isabel v. United States, 980 F.2d 60, 65 (1st Cir. 1992)(recognizing that application note 2 to U.S.S.G. §3E1.1 might apply where defendant admitted his conduct and denied only that it constituted money laundering under the relevant statute).

Perhaps even more importantly, the parties discussed the possibility of resolving the instant indictment short of going to trial.  In connection with this, Mr. Bucci sought to preserve his right to seek appellate review of this Court's denial of his motion to suppress and motion for dismissal based on vindictive prosecution.  Unfortunately, the government refused this request and would not allow Mr. Bucci to enter a conditional plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.  For this reason, as well as others, such as disagreement on acceptable sentencing range, Mr. Bucci determined to go to trial.  Mr. Bucci's decision to go to trial and preserve legal issues unrelated to the factual underpinning of the charges

constitutes precisely the type of situation the commentary to the acceptance of responsibility guideline addresses.  See United States v. Broussard, 987 F.2d 215, 224 (5th Cir. 1993)(defendant entitled to acceptance of responsibility where he admitted ownership of guns found in his home and their location but went to trial to contend that 18 U.S.C. § 924(c) did not apply to uncontested facts).

For all of the above reasons, defendant should be granted a two-level reduction for acceptance of responsibility, notwithstanding the fact that he went to trial.  Robinson, 75 Fed. Appx. 32; Estrada-Martinez, 11 Fed. Appx. 725, 728.

III. The Lack of Reliable Evidence Mandates that Defendant's Base Offense Level Under U.S.S.G. § 2D1.1 is 30 Not 32.

The Presentence Report (Paragraph 142) seeks to hold Mr. Bucci accountable for 1,905.09 kilograms of marijuana as relevant conduct.  The defendant submits that the Presentence Report's increasing of his sentence, based as it is primarily on the anecdotal interpretations of the trial witnesses, is unwarranted. A sentencing court must make particularized findings as to relevant conduct weights attributable to a defendant.  United States v. Green, 175 F.3d 822 (10th Cir. 1999); United States v. Wilson, 116 F.3d 1066 (5th Cir. 1997).

Here, there is simply insufficient reliable evidence to hold the defendant accountable for a quantity of drugs vastly higher than those attributable to him during the period of the charged

-12-

marijuana conspiracy.  The evidence at trial was conflicting and inconsistent with regard to both the time frame that Mr. Bucci received marijuana from Belmonte and the amounts.

As to the time frame, Belmonte originally told the government that he had not met Mr. Bucci until December, 2001 or January, 2002.  At trial, he contradicted his prior statements and said that he met Mr. Bucci sometime in 1999 and that he started selling him marijuana "around 1999".  Notwithstanding this fact, the Presentence Report accepts the 1999 date as the starting point for relevant conduct purposes.  Quite simply, Belmonte's statement that "around 1999" is when he first sold marijuana to Mr. Bucci is uncorroborated and not worthy of trust.[7]  Furthermore, Carbone testimony is equally unclear on when he started to receive marijuana from Mr. Bucci. Specifically, he testified that Mr. Bucci was his supplier starting "around in the '99-2000" period.  Carbone Transcript, p. 18.  Defendant submits that there is insufficient evidence to support 1999 as the starting point of the relevant conduct period.  See United States v. Sklar, 920 F.2d 107, 114 (1st Cir. 1990)(if the exact amount of drugs cannot be determined, the

_____

[7] Counsel reminds the Court that Belmonte testified that there was no one he would not lie to if it enured to his benefit. Furthermore, Genduso did not meet Mr. Bucci or begin to live with him until sometime in 2001 or 2002; therefore, she is unable to corroborate Belmonte's testimony.

court must err on the side of caution when choosing between a number of plausible estimates).

As to weight, the testimony was equally unreliable and conflicting.  The Presentence Report seeks to hold Mr. Bucci responsible for 10 deliveries per year.  Again, this is unsupported by the trial testimony.  First, Carbone testified that he received marijuana from the defendant only "six to eight times a year."  Carbone Transcript, p. 20.  Second, Genduso testified that "sometimes it was months that he (Belmonte) wouldn't even come."  Genduso Transcript, Volume I, p. 13.  Moreover, Genduso testified that the amounts varied in that "sometimes he would get 20 bales, sometimes 10" and that the bales varied in weight from 10 pounds to 17 ½ pounds.  Id.  Additionally, Belmonte testified that he initially delivered small amounts of marijuana to Mr. Bucci, approximately 55 pounds.  Belmonte Transcript, February 16, 2007, p. 6.

Finally, Belmonte testified that he earned between $150,000 and $200,000 a year from his marijuana business.  He also testified that he earned approximately $125.00 a pound.  Accordingly, using the conservative numbers, as the Court must do, Belmonte trafficked in no more than 1,200 pounds of marijuana a year ($150,000 divided by $125.00).  Additionally, Belmonte testified that he had three customers: Diplatzi, Bucci, and

-14-

Maddeford.[8]  The testimony was conflicting regarding which
customer received the most marijuana.  Regardless, it is clear
that Bucci received no more than one-third of the maximum 1200
pounds of marijuana Belmonte distributed and it is probable that
he received significantly less due to the fact that Belmonte
almost certainly had other customers.

In these circumstances, this Court should find that the
relevant conduct quantity found by the Presentence Report is
unsubstantiated.  Accordingly, using a conservative approach,
this Court should find that Mr. Bucci is responsible for
somewhere between 700 and 1000 kilograms of marijuana, which
results in a base offense level of 30.  See  United States v.
Sklar, 920 F.2d 107, 114 (1st Cir. 1990)(if the exact amount of
drugs cannot be determined, the court must err on the side of
caution when choosing between a number of plausible estimates);
United States v. Rivera-Madlonado, 194 F.3d 224 (1st Cir.
1999)(use of 26 surveillance videotapes of 20 to 25 drug sales
per hour and agent's "expert" testimony that conspiracy would
have distributed more than 24 kilograms of controlled substance
was speculative and required resentencing); United States v.
Sepulveda, 15 F. 3d 1161 (1st Cir. 1993)(use of trial testimony
that defendant accompanied witness on 15 to 20 drug buying trips

---

[8] There is sufficient evidence, however, to believe he had other
customers such as Dr. McCullough.

in which anywhere from 4 ounces to one kilogram was purchased was insufficient to reach an average.  Multiplying the average number of trips by the average amount purchased was not correct); <u>United States v. Welch</u>, 15 F.3d 1202 (1st Cir. 1993)("where sentencing court relies solely on the rough drug quantity estimates of lay witness, expressed in terms of a range, rote averaging is an insufficiently reliable basis for a supportable drug quantity finding).

### 18 U.S.C. § 3553 AND OTHER RELEVANT SENTENCING FACTORS

<u>United States v. Booker</u>, 125 S.Ct. 738 (2005) obligated courts to fashion sentences that are both reasonable and "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in § 3553(a)(2).  <u>Booker</u>, 125 S.Ct. at 764-65.  Instead of being bound by the sentencing guidelines, <u>Booker</u> instructs that the guidelines are just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).[9]

---

[9] Moreover, in <u>Rita v. United States</u>, 551 U.S. ___(2007), the Supreme Court firmly restated that the guidelines are simply just one factor to consider and due not carry any additional weight to the other factors set out in section 3553(a); thereby, casting out the first circuit's ruling in <u>U.S. v. Jimenez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006) that upheld a finding that the Guidelines should be afforded "substantial weight" by the District Court.  <u>See</u> <u>Rita</u>, 551 U.S. ____(2007)(majority opinion, pp. 11-12)(sentencing court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

I.   The Need for the Sentence Imposed to Promote Certain
     Statutory Objectives.

There is no disputing that the conduct Mr. Bucci engaged in
was serious and merits significant punishment.  A sentence of 72
months, should the Court adopt defendant's guideline position, or
no more than 96 months, if the Court adopts the Presentence
report without change, is severe and adequate to reflect the
goals associated with these factors.  Such a sentence is
significant and far better reflects the seriousness of
defendant's conduct than does the 151-188 month guideline
sentence range calculated by Probation.  Similarly, a sentence in
the range suggested by the defendant is more than enough to
promote respect for the law, both specifically as to Mr. Bucci
and generally as to the public at large.  Quite simply, a
sentence of between 6 and 9 years for the distribution of
marijuana sends the strongest possible message.  Clearly, Mr.
Bucci's monumental lack of judgment has wrecked his life far
beyond any prison sentence this Court should impose, and there
can be little doubt that the period of incarceration will provide
overwhelming deterrence to any thought of relapse in the future.

II.   History and Characteristics of Mr. Bucci.

Mr. Bucci is 34 years old and has no prior criminal
convictions.  In fact, prior to this case he had never served a
day in jail.  While not a spectacular student, Mr. Bucci has
always had an entrepreneurial spirit and novel business ideas.

As Eric Carbone testified to at trial, Mr. Bucci always had "big dreams." Carbone transcript, p. 86. Carbone went on to describe how Mr. Bucci started a business called "Dessy Drive," which was a designated driver service. Id. In addition, Mr. Bucci made a serious and concerted effort to establish a DJ business. Id. Specifically, he organized concerts and served as a DJ on a regular basis for a period of approximately 10 years. These were longstanding efforts to establish a legitimate business and demonstrate that following whatever prison sentence this Court imposes Mr. Bucci is ready to work hard to prove he has learned from his prior mistakes.

Additionally, there is concrete evidence to support the finding that Mr. Bucci has learned from his monumental lapse in judgment. Specifically, Mr. Bucci did exceedingly well since May 6, 2004, when this Court released him on pretrial conditions. In fact, his pretrial release shows a progression in Mr. Bucci's growth and responsibility as a person. Originally, the Court released him to the third-party custody of his uncle, Donald O'Connor, placed him on home incarceration and electronic monitoring, and released him on $250,000.00 secured bond. On November 16, 2005, after evidencing to the Court his respect for his conditions, the Court removed the requirement of home confinement and no longer required Mr. Bucci to be monitored electronically.

Furthermore, during his pretrial release, Mr. Bucci maintained employment as a case manger for J. Wilson and Associates, a collection agency. PSR at ¶ 211. Attorney Wilson told probation that Mr. Bucci was "hard working" and "reliable." Finally, following the jury verdict, the Court ordered Mr. Bucci to self-report to the Marshal on March 2, 2007. Mr. Bucci willingly and voluntarily complied with this Order.[10] Throughout each phase of his pretrial release, Mr. Bucci not only demonstrated respect for the Court, but also exhibited maturity and growth as a person.

Finally, in considering Mr. Bucci's history, one cannot help but be struck by the theme that runs through the letters of support. To a person, the letters describe Mr. Bucci as a genuine and supportive person who would do anything for a friend. The letters express the fact that he has always been willing to

--------

[10] During the March 1, 2007, hearing concerning when Mr. Bucci should self-report, the Court indicated that if Mr. Bucci complied with its Order, the Court would consider that fact at the time of sentencing. Specifically, the following colloquy took place between the Court and undersigned counsel:

Mr. Sinnis: And when he does report, I think that will, once again, show the Court that he complies with all of your orders.

The Court: I believe it will be – I will respect him for doing so. You can tell him this: Certainly his behavior in court and with regard to tomorrow will be taken into consideration, as it should be, among other things....

Transcript of Chambers Conference, March 1, 2007, p.14. (Attached as Exhibit E).

help a friend or family member in need and support them through difficult times.  See Exhibit A.

While a period of incarceration is mandated, Mr. Bucci has clearly demonstrated to this Court that he can and will live a law abiding life upon his release from prison.

III. Unwarranted Sentencing Disparity.

18 U.S.C. § 3553(a)(6) states that the sentencing court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Here the sentence suggested by defendant would ameliorate the disparity that would result from a guideline sentence.

The following individuals were either involved in the same conspiracy to distribute marijuana as Mr. Bucci or had connections to at least one participant of the conspiracy: Gary Milo, Douglas Bannerman, Frank Giglio, Mark Wojciechowski, Anthony Belmonte, Ken Maddeford, Mike DiPlatzi, and Leigha Genduso.  Three of these individuals: Ken Maddeford, Mike DiPlatzi, and Leigha Genduso were never prosecuted for their involvement in the conspiracy.[11]  Therefore, they received no criminal record or jail time for their involvement.

---

[11] The Court is reminded that originally Wojciechowski told the government that DiPlatzi was Belmonte's largest customer; however, at trial Wojciechowski testified that he never heard of DiPlatzi. Further, Belmonte testified that he had been delivering marijuana to Maddeford years before he ever even knew Mr. Bucci.

Of greater interest is the treatment afforded Gary Milo, Douglas Bannerman, Frank Giglio, Mark Wojciechowski, and Anthony Belmonte.  Each of these individuals were charged in federal court with conspiracy to distribute marijuana.  The results were as follows:

- Gary Milo - <u>United States v. Gary Milo</u>, 04 CR 10054 (D. Mass.).  Pled guilty to conspiring to distribute marijuana and that the conspiracy involved over a 1000 kilograms of marijuana.  Gary Milo was Anthony Belmonte's supplier for a period of time.  Wojciechowski testified that Milo was responsible for tens of thousands of pounds of marijuana.  **SENTENCE: received a sentence of time served, which amounted to 5 days imprisonment**.

- Mark Wojciechowski - <u>United States v. Mark Wojciechowski</u>, 04 CR 00344 (D. Arizona).  Pled guilty to conspiring to distribute marijuana and admitted at Mr. Bucci's trial that he had been selling marijuana for approximately 20 years and sold tens of thousands of pounds.  **SENTENCE: 4 years Probation, no jail**.

- Frank Giglio - <u>United States v. Frank Giglio</u>, 03 CR 10370 (D. Mass.).  Pled guilty to conspiring to distribute marijuana with Bannerman.  **SENTENCE: 78 months in prison.**

- Douglas Bannerman - <u>United States v. Douglas Bannerman</u>, 03 CR 10370 (D. Mass.).  Pled guilty to conspiring to distribute marijuana.  Government filed information under 21 U.S.C. § 851 to seek increased punishment due to prior conviction.  Bannerman, like Gary Milo, was a high level marijuana dealer who dealt tens of thousands of pounds of marijuana.  **SENTENCE: 102 months in prison.**

- Anthony Belmonte - <u>United States v. Anthony Belmonte</u>, 03 CR 10220 (instant indictment).  Pled guilty to conspiring to distribute marijuana.  Testified at trial that he had dealt marijuana for eleven years.  Wojciechowski testified that Belmonte received significant amounts of marijuana.  Belmonte was Mr.

Bucci's supplier and above Mr. Bucci in the instant
marijuana conspiracy.  In a plea agreement the
government has agreed that Mr. Bucci's base offense
level under U.S.S.G. § 2D1.1 is 26, which represents at
least 100 kilograms but less than 400 kilograms of
marijuana.  After factoring in adjustments for
acceptance of responsibility and safety valve, **Mr.
Belmonte's guideline range is 37-46 months (prior to
any 5K motion).  SENTENCE: Unknown.**

Each of the above individuals were involved in the instant
conspiracy at a higher level or were part of another conspiracy
to distribute marijuana at a level higher than Mr. Bucci.  Yet,
should the Court adopt and sentence Mr. Bucci within the
sentencing guideline range set out in the Presentence report,
each and every one of the defendants would have received a
sentence substantially below that of Mr. Bucci.  Defendant
concedes that Milo, Wojciechowski, Bannerman, and Belmonte all
cooperated, to varying degrees, with the government.
Nonetheless, cooperation does not explain or justify the extent
of the disparity that will result in this case should Mr. Bucci
be sentenced in accordance with the guideline range calculated by
probation.  This is borne out by the fact that within the
District of Massachusetts cooperation results in no more than a
forty percent reduction from one's guideline sentence.
Accordingly, cooperation is an insufficient basis upon which to
explain the above sentences.

For example, Milo received only 5 days in jail and
Wojciechowski received only a probationary sentence.  Both of

these individuals were involved in distributing marijuana in amounts far in excess of Mr. Bucci.  Cooperation does not and cannot explain this disparity.  Moreover, even though Giglio and Bannerman received long prison sentences both are less than Mr. Bucci's guideline range as calculated by probation.  Furthermore, Bannerman, unlike Mr. Bucci, had a prior conviction that should have resulted in a much higher sentence under 21 U.S.C. § 851.  While his sentence was severe, 102 months, it was lenient and considerably below what his guideline range should have yielded.  Again, this cannot be explained or justified by the fact that he cooperated.

The Court should therefore sentence Mr. Bucci to between 72 and 96 months, depending on the Court's determination of the guideline issues raised above, in order to avoid unwarranted disparity with the above cases and to adhere to the mandate of 18 U.S.C. § 3553(a)(6).

## CONCLUSION

For the foregoing reasons, undersigned counsel urges this Court to adopt the sentencing guideline range as calculated in this Memorandum and impose a sentence of 72 months.  If this Court does not accept defendant's arguments with respect to the sentencing guideline range, defendant requests that the Court impose a sentence no higher than 96 months (depending on whether the Court accepts some or none of defendant's sentencing

guideline calculations) under the principles enunciated in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) and as set forth in 18 U.S.C. § 3553(a).

                              SEAN BUCCI
                              By His Attorney,


                              /s/ Stylianus Sinnis
                              Stylianus Sinnis
                              B.B.O. #560148
                              Federal Defender Office
                              408 Atlantic Ave., 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061


<u>Certificate of Service</u>

     I, Stylianus Sinnis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2007.

                              /s/Stylianus Sinnis
                              Stylianus Sinnis